JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
BRITTNEY CAMPBELL, NORTH CAROLINA STATE BAR NO. 31433
ASSISTANT UNITED STATES ATTORNEY
DARCI W. CRANE, IDAHO STATE BAR NO. 8852
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. MYRTLE ST. SUITE 500
BOISE, ID 83702-7788
TELEPHONE: (208) 334-1211

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>    vs.<br><br>SUSAN WHITE (aka SUSAN MILNE),<br><br>    Defendant. | Case No. 2:23-cr-00137-AKB<br><br>**MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY CONDITIONS OF RELEASE/SET BOND** |

The United States of America moves this Court to revoke the magistrate court's Order

Granting Defendant's Motion to Modify Conditions of Release/Set Bond. (ECF 30.) The

conditions imposed by the District of New Jersey were narrowly tailored and the least restrictive

means to reasonably assure the Defendant's appearance. The Government respectfully disagrees

with the District of Idaho magistrate court's assessment that a $10,000 bond is a sufficient

condition to permit the Defendant to leave the United States and reside unsupervised in Scotland

during the pendency of her federal criminal case. Indeed, there are no extenuating or compelling

reasons why the Defendant should be allowed to reside in Scotland, such as medical, family, or

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 1

even financial. Instead, allowing the Defendant to reside in Scotland gives her the opportunity to be free from all supervision, including pretrial services, federal law enforcement, and federal courts.

Simply put, allowing nearly any defendant—under federal indictment and facing significant prison time—to reside in a foreign country is unreasonable. No bond mitigates this concern because allowing such a circumstance gives defendants the opportunity to decide between forfeiting the bond or returning to the United States for a potential federal conviction and prison term. That effectively amounts to giving a defendant the unilateral choice of paying a fine to avoid prison. And there is little, if any, that can be done to prevent that unilateral choice. This cannot be.

## FACTUAL BACKGROUND

### *Indictment*

In May 2023, the Grand Jury in the District of Idaho returned an indictment against Defendant charging her with conspiracy to commit money laundering, three counts of concealment money laundering, and one count of operating an unlicensed money transmitting business. (ECF 2.) At the time of the indictment, Defendant no longer resided in the United States. A warrant issued. (ECF 3.)

The Indictment charges that the Defendant conspired with others and served as a money mule, knowingly using her own and others' bank accounts to receive fraud proceeds. (ECF 2, p.5.) The Defendant then withdrew the deposited fraud proceeds via multiple cash withdrawals and wired the funds using money transmitters such as Western Union and MoneyGram. (ECF 2, p. 5.) Because the Defendant's accounts were repeatedly closed or frozen due to fraudulent activity, she recruited others into the scheme, including her family members and their friends.

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 2

(*Id.*) The Defendant met with her co-conspirators in person, through social media, via text, and other means. (*Id.*) As payment for her services, the Defendant kept a portion of the fraud proceeds she laundered. (*Id.*)

For example, the Indictment alleges a specific incident in June 2018. (ECF 2, p.6.) In that instance, the Defendant directed a money mule she recruited to open an account at a financial institution. (*Id.*) The money mule then provided the Defendant with the account information, including number, username, and password for online access. (*Id.*) A victim subsequently received a fraudulent email from an imposter directing them to wire money to the account controlled by the money mule and the Defendant, instead of the intended escrow company. (*Id.*) As a result, the victim wired $56,385 to the fraudulent account opened at the Defendant's instruction. (*Id.*) Then, the Defendant accompanied the money mule she recruited to multiple banks to withdraw the funds, keeping a portion of the money. (ECF 2, p. 7.) Between November 2017 and July 2018, the Defendant is charged with transferring or causing to be transferred more than $220,000 in illegal wire fraud proceeds. (ECF 15, p.3.)

### *Investigation*

During the investigation, agents obtained extensive bank records showing the movement of funds into and out of the Defendant's and related money mules' bank accounts. (*Id.*) At least four witnesses confirmed that the Defendant asked them to allow funds to be deposited into their bank accounts in exchange for compensation. (*Id.*) Witness statements were corroborated by text messages between the witnesses and the Defendant that were obtained during the investigation. (ECF 15, p.4.) The Defendant was also captured on video surveillance depositing and withdrawing the funds at various banks. (*Id.* at 3.)

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 3

The Defendant was also interviewed by special agents with the U.S. Secret Service on at least two separate occasions during the investigation: April 5, 2019 and February 6, 2020. (*Id*. at 4) In addition, on or about April 17, 2019, the Defendant consented to a search of her cell phone and was cautioned by law enforcement about deleting evidence. (*Id*.) Nonetheless, when the Defendant provided her cell phone to law enforcement on or about April 24, 2019, the agent conducting the cell phone extraction reported that text messages between the Defendant and one of the individuals for whom the Defendant was laundering proceeds appeared to have been deleted for the time period November 21, 2017 through October 28, 2018. (*Id*.) Following her interactions with federal law enforcement, the Defendant moved from Idaho, where she had resided since approximately 1995, to the United Kingdom, specifically Scotland in 2020. *See Exhibit 1*, p. 2.

During the investigation, at least three of the Defendant's children testified before the grand jury. (ECF 24, 25, 30.) According to affidavits submitted by those individuals and proffer of defense, they did not inform the Defendant about the details of their testimony. (ECF 24, 25.)

### *Return to the United States*

On June 17, 2025, the Defendant re-entered the United States and was arrested in Newark, New Jersey. (ECF 20, 22, p. 2.) The following day she was interviewed by pretrial services, and said she last used cocaine thirty years ago. *Exhibit 1*, p.3-4, *Pretrial Services Report*. That was not true. The Defendant tested positive for cocaine. *Exhibit 2*, Admission of Drug Use. The Defendant was released on a $100,000 unsecured bond with conditions. (ECF 6.) The release order required the Defendant to surrender her passports and travel documents and limit her travel to the continental United States. (*Id.*) It further required that she participate in substance abuse testing and/or treatment as required by pretrial services. (*Id.*) The Defendant was

subsequently released and ordered to appear in Idaho on June 24.

*Motion to Modify Conditions*

The Defendant appeared in Idaho on June 24. (ECF 7.) Having already been released on conditions, the Government did not seek to reopen the detention hearing or appeal the District of New Jersey's release order, instead asking that the Defendant be released on the same terms and conditions. Pretrial services in Idaho also recommended the Defendant be released on the same conditions. *Exhibit 3*, Addendum to the Pretrial Service Report. According to the magistrate court's minute entry, the "Court f[o]und Defendant was a risk of flight, triggering hearing." (ECF 7.) The Defendant was released on the Order Setting Conditions of Release issued in the District of New Jersey (ECF 6.) For the first time, the Defendant inquired about returning to Scotland during the pendency of her case. The magistrate court set a hearing on the conditions of release for June 30.

The Government filed its first objection to the Defendant's requested release conditions on June 27. (ECF 15.) Setting forth its serious concerns about the Defendant's risk of flight if allowed to return to Scotland, analyzing the issue within the framework of 18 U.S.C. § 3142. (ECF 15.) The Government estimated the Defendant's offense level as 24, if she was found to be in the business of money laundering. (ECF 15, p. 3.) The resulting estimated guidelines range was 51 to 63 months. (*Id.*) The Defendant did not file a formal motion. At the hearing on June 30, the minute entry and docket show the magistrate court entered a new Order Setting Conditions of Release.[1] (ECF 18, 19.) The new order still required the Defendant to surrender her passport, limit her travel, and engage in needed drug testing and treatment. (ECF 19.) At the

---

[1] Based on the available record, it does not appear the magistrate court made the requisite findings pursuant to 18 U.S.C. § 3142(f) to reopen detention.

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 5

hearing, the Defendant discussed options regarding posting a secured bond. The magistrate court did not foreclose the possibility.

On July 10, the Defendant filed a motion to modify, requesting the Defendant be allowed to return to Scotland while her criminal case is pending in exchange for a $10,000 secured bond. (ECF 21.) Once again, the Government objected due to the serious risk the Defendant will flee. (ECF 22.) Over the Government's objection, the magistrate court granted the Defendant's motion, citing extradition as the Government's remedy. (ECF 30.) This Motion followed.

## STANDARD OF REVIEW

The district court reviews a motion to revoke an order of release de novo. *United States v. Koenig*, 912 F.2d 1190, 1192-1193 (9th Cir. 1990) "[T]he district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate." *Id*. at 1193. Whether or not new evidence is to be offered, the Court may conduct an evidentiary hearing if "necessary or desirable." *Id.* "The motion shall be determined promptly." 18 U.S.C. § 3145(b).

## ANALYSIS

### I.   Legal Framework

Whether a defendant is detained pending trial is a two-step analysis under the Bail Reform Act (BRA). First, the court determines whether a detention hearing is authorized. Second, the court determines whether "any condition or combination of conditions sets forth in [§ 3142(c)] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

A court can "at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). Neither the BRA nor the Federal Rule of Criminal Procedure

address the standard or procedures for modification of pretrial conditions. *See United States v. Ebonka*, 733 F.Supp.3d 967, 969 (D. Nev. May 7, 2024). Often, courts have found that a motion to modify conditions of pretrial release equates to a motion to reopen detention. *Id.* (collecting cases). Treated thus, a motion to modify conditions of pretrial release would be subject to a showing that new information exists that was unknown at the time of the hearing and materially impacts risk of flight and danger to the community. *Id.*; 18 U.S.C. 3142(f). The BRA does instruct courts to impose the least restrictive conditions that will reasonably assure appearance. 18 U.S.C. § 3142(c). In deciding what that means in this case, the Court can make its own independent determination, including considering new evidence, to reach its decision. *See Koenig*, 912 F.2d at 1192-1193.

Caselaw examining similar issues is sparse. Some courts have considered related issues, which can help guide the Court's evaluation in this case. In *Ebonka*, the district court denied a joint motion to modify the defendant's conditions of release to allow him to travel internationally. *Ebonka*, 733 F.Supp.3d at 971. The court denied the motion, finding the parties had not provided new facts sufficient to meet the threshold to reopen the issue.[2] *Id.* In addition, the court stated that the travel restrictions were the "least restrictive" means to address risk of flight. *Id.* Another district court considered a non-citizen defendant's decision to stay in the United States following an interview with the FBI before she was charged to be evidence weighing against her risk of flight. *United States v. Fanyo-Patchou*, 426 F.Supp.3d 779, 783 (W.D. Wash. Dec. 12, 2019). In considering conditions of release, courts have also considered

---

[2] The Government did not argue to the magistrate court that there was insufficient evidence to reopen the issue of detention. That does not mean, however, that there was sufficient evidence to reopen the issue.

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 7

the relationship between the defendant and the party funding the secured bond. *See Koenig*, 912.

F.2d at 1193.

**II.    A secured bond of $10,000 will not reasonably assure the Defendant's appearance.**

Within months of being interviewed by federal agents and deleting text messages, the

Defendant left Idaho, her home of almost 25 years, and moved to Scotland. She remained in

Scotland for five years, and when she returned to the United States, she was arrested and tested

positive for cocaine. A secured bond of $10,000 is insufficient to assure her appearance at future

court hearings. Further, there are no extenuating or compelling reasons to allow the Defendant to

reside in Scotland. For instance, in this case, the Defendant is a U.S. citizen, she is not a Scottish

or United Kingdom citizen; she has her husband in Scotland, but her children reside in the

United States; she is not undergoing medical treatment in Scotland; and that status of her job is

uncertain.[3] Instead, she is a U.S. citizen who can lawfully work and reside in the United States

during the pendency of her case without significant, if any, prejudice.

Procedurally, the Government did not seek detention in this case. The Ninth Circuit has

made it clear that in noncapital cases, the denial of pretrial release should be rare. *United States*

*v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985.) Heeding the text of the BRA and binding

caselaw, the Government completed its analysis of the § 3142(g) factors and concluded there

was a combination of conditions that could "reasonably assure the appearance" of the

Defendant—that is, the conditions ordered by the District of New Jersey. *See* 18 U.S.C.

§ 3142(g); (ECF 6). That does not mean, however, that the Government endorsed or approved of

---

[3] In her motion, the Defendant states that "she is optimistic that a delay in her return will not result in her termination." (ECF 21, p. 3.)

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 8

the Defendant residing in a foreign jurisdiction—quite the contrary, as the Defendant was required to surrender her passport and her travel was restricted to the continental United States.

The Government believes that narrowly tailored travel restrictions are the least restrictive conditions to assure her appearance. The Government did not believe that it would have to choose between seeking pretrial detention or allowing the Defendant to reside in a foreign jurisdiction. Instead, there is a middle ground that is more appropriate for the Defendant and the Government—that is, taking her passport and international travel documents and limiting her travel.

In addition to the fact that the Defendant left the country after learning she was under federal investigation, there is also the issue of dishonesty. In her first interaction with law enforcement after returning to the country, the Defendant was dishonest about her drug use. It is also relevant that the reason the Defendant is before the Court is because she is charged with conspiracy and laundering fraud proceeds, crimes that involve deceit. When a court releases a defendant on conditions, the court is signaling its' belief a defendant will abide by those conditions. Placing the Defendant outside the reach of the federal criminal justice system is a level of trust that is unreasonable, especially given Defendant's deceit, in this case. The only security the Defendant provides is a $10,000 secured bond.[4] A bond that is only partially funded by the Defendant. (ECF 21, p. 2.) Another portion of the money comes from the Defendant's husband's savings. (*Id.*) Finally, a third of the money comes from her spouse's family. (*Id.*)

And no amount of bond mitigates the risk that she will not return. In fact, engaging in the analysis of how much bond to post—at all—is a slippery slope. For instance, in this case, a

---

[4] The Defendant's Motion acknowledges that she has additional, foreign assets. (ECF 21.) Assets in Scotland that are unknown and could aid in the ability to flee.

MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY CONDITIONS OF RELEASE/SET BOND - 9

$10,000 bond will give the Defendant the choice between forfeiting the bond or returning to the United States to face a potential federal conviction and prison sentence. And once that bond is posted and the Defendant returns to Scotland, that choice is unilateral, and courts are effectively powerless to remove that unilateral choice. In Scotland, the Defendant is beyond the reach of pretrial services, federal law enforcement, including the U.S. Marshals, and most especially, federal court orders. The choice to return or forfeit the bond is hers and hers alone. Thus, engaging in the analysis of how much bond to post is a hazardous endeavor—how much is enough, in any case, to force somebody to return for a possible prison sentence? The better answer is to simply not allow a U.S. citizen to reside in a foreign jurisdiction while her federal criminal case is pending.

## III.    Extradition is not a reasonable remedy.

The magistrate court cites extradition as the Government's remedy should the Defendant fail to return. (ECF 30, p.7-8.). But at its best, extradition is a time intensive endeavor—sometimes yearslong—that is not guaranteed at all. Further, there is no real way to prevent the Defendant from travelling to other jurisdictions where extradition is even less likely and more time consuming. It is effectively an empty remedy at best.

Even if extradition is successful, the case would be several years older. And while proceeding through the intensive extradition process, critical witnesses can disappear, become ill, die, or have difficulty remembering old events. Then the Government may not be able to proceed with the case at all, and the Defendant still avoids a potential prison term. Again, this cannot be.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests the Court revoke the

Order Granting Defendant's Motion to Modify Conditions of Release/Set Bond.


Respectfully submitted this 1st day of August, 2025.


                                JUSTIN D. WHATCOTT
                                ACTING UNITED STATES ATTORNEY
                                By:


                                */s/ Darci W. Crane*
                                DARCI W. CRANE
                                Assistant United States Attorney


MOTION FOR REVOCATION OF ORDER GRANTING MOTION TO MODIFY
CONDITIONS OF RELEASE/SET BOND - 11